STATE ex rel. COM'RS OF LAND OFFICE v. SOUTHLAND ROYALTY CO.

No. 33354.     March 20, 1951.

*230 P. 2d 471.*

T. J. Lee and Floyd Wheeler, Oklahoma City, for plaintiff in error.

LaMar & Bailey, Guymon, for defendant in error.

HALLEY, J. The State of Oklahoma on relation of the Commissioners of the Land Office instituted this action against the Southland Royalty Company to quiet title to 160 acres of land in Texas county, Oklahoma. Plaintiff

alleged that the State was the owner of the land in fee simple and in possession, having acquired title by sheriff's deed dated June 25, 1941, duly recorded on the same date; that the Southland Royalty Company claimed some interest in the land, alleged to be inferior to the title of the State, and prayed for judgment quieting title and barring the Southland Royalty Company from any interest.

The Southland Royalty Company answered by general denial, but admitted that the plaintiff was the grantee in the sheriff's deed mentioned, and set up a claim to an undivided one-half interest in all of the oil, gas, and other minerals in the land, alleged to have been acquired by mineral deed dated July 27, 1929, from the then owners of the land, recorded September 3, 1929; and by cross-petition prayed that title to such one-half interest in the minerals be quieted in it as against the State.

The plaintiff replied by general denial, and alleged that the deed to one-half of the mineral interest was canceled and extinguished by resale tax deed from the board of county commissioners of Texas county, Oklahoma, dated May 20, 1941, and recorded June 12, 1941.

The case was tried on stipulation, by which the following facts were agreed upon:

(1) The Southland Royalty Company acquired a one-half interest in all the oil, gas and other minerals in the land by mineral deed dated July 27, 1929, executed by Joe T. Watson et ux., then owners of the land.

(2) That on September 24, 1930, the Watsons executed a mortgage covering the land to the Commissioners of the Land Office to secure a loan of $1,750. That such mortgage was foreclosed by decree entered June 29, 1940, providing for a six months' stay of execution, and that on June 23, 1941, the sheriff executed to the plaintiff his deed conveying the land to the State of Oklahoma.

(3) That in 1937, the land was sold for taxes to Texas county, Oklahoma, and on May 20, 1941, the county treasurer of Texas county offered it for resale, and it was sold to Texas county by deed recorded June 12, 1941.

(4) That on July 7, 1941, the Secretary of the Commissioners of the Land Office notified the treasurer of Texas county that title to the land had been acquired by the Commissioners of the Land Office, in compliance with Title 64, sec. 151, O.S. 1941.

(5) That the county treasurer of Texas county made proper notations on his records, canceling all delinquent taxes, tax certificates, and tax deeds, as required by Title 64, sec. 151, O.S. 1941.

(6) That the Southland Royalty Company was not a party to the foreclosure proceeding and had never executed any conveyance affecting its interest in the minerals.

This stipulation was amended to the effect that the board of county commissioners of Texas county was a party defendant in the foreclosure proceedings, and that the decree therein provided for a stay of execution for six months; that such payment of the amount of the foreclosure judgment or mortgage indebtedness was not made, and the sheriff duly executed a deed conveying the land to the State of Oklahoma. The stipulation makes no exception to the regularity of the matters agreed upon.

Judgment in this cause was entered quieting title in the State to all of the land except an undivided one-half interest in the oil, gas and other minerals, and title thereto was quieted in Southland Royalty Company; and the plaintiff has appealed.

The stipulation of facts upon which the court entered judgment makes no mention of whether or not there was production of oil and gas upon this

land. In the absence of an agreement or showing that there was production on any of the pertinent dates, this court assumes that the land was not producing, and bases its decision upon such assumption. In the absence of production, the mineral rights pass with the land by a resale tax deed. Sears v. Randolph et al., 195 Okla. 200, 156 P. 2d 595; Hales et al. v. Lee et al., 199 Okla. 110, 184 P. 2d 451; Three-in-One Oil & Gas Co. v. Bradshaw, 192 Okla. 309, 135 P. 2d 992.

We are here concerned only with the one-half of the royalty which was owned by Southland. Clearly this interest was not divested from Southland by the mortgage foreclosure, because they owned the paramount title to this one-half of the royalty and were not even made parties to the foreclosure. In State ex rel. Commissioners of the Land Office v. Reynolds et al., 201 Okla. 400, 206 P. 2d 184, we held that the paramount title holder could not be foreclosed of his rights in an action where he was a party and in which case there were no allegations in the petition or showing made that his title was subordinate to the mortgage. Certainly Southland's interests were not cut out by the mortgage foreclosure. We then must consider the effect of the resale tax deed issued on June 12, 1941. In our opinion this effectively placed the title to the interest owned by Southland in the purchaser at the resale, Texas county, Oklahoma, if the proceedings leading up to the resale and the resale itself are regular. This one-half of the royalty is still vested in Texas county unless the Commissioners of the Land Office obtained good title to this one-half by virtue of the sheriff's deed of June 23, 1941. The title to this one-half interest of royalty was never properly in the foreclosure proceedings, because the paramount title to it was in Southland until the resale tax deed was issued. At the time the judgment of foreclosure was taken, Texas county had no title to the one-half royalty, but was only a purchaser at the de-

linquent tax sale and had only a lien for its taxes, subject to the right of the Watsons and Southland to redeem up until the resale, so that judgment could not give this one-half to the Commissioners of the Land Office. The Commissioners of the Land Office have no right to foreclose an interest not covered by their mortgage. See State ex rel. Commissioners of Land Office v. Reynolds, supra.

Inasmuch as the Commissioners of the Land Office never acquired the title to the one-half of the royalty formerly owned by Southland, their Secretary had no authority to certify to the county treasurer of Texas county that the Commissioners were the owners thereof, and said county treasurer had no authority or right to strike said property from the taxable-property list and strike all delinquent taxes assessed and charged against said land, and all tax certificates and tax deeds based upon such delinquent taxes, insofar as this one-half of the royalty is concerned; so sec. 151, Title 64, O.S. 1941, has no application.

This case cannot be properly disposed of without the presence of Texas county herein. Under section 236, Title 12, O.S. 1941, which was taken from Kansas and construed by the Supreme Court of Kansas in Benton v. Benton, 84 Kan. 691, 115 P. 535, we have the right to order an additional party or parties to be brought in an action so that the case may be fully and finally disposed of.

The cause is reversed, with directions to the trial court to proceed in conformity herewith.

ARNOLD, C.J., LUTTRELL, V.C.J., and GIBSON and JOHNSON, JJ., concur. WELCH, CORN, DAVISON, and O'NEAL, JJ., dissent.

CORN, J. (dissenting). I think the judgment of the trial court should be affirmed. It appears to me the majority opinion is in grievous error in the

statement "This case cannot be properly disposed of without the presence of Texas county herein.", and cites as authority 12 O.S. 1941 §236, which provides as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

So, it is plain to see that said section, supra, is not applicable to the facts in this case, for the reason a full and complete determination of the controversy between the parties can be determined without prejudice to the rights of others.

12 O.S. 1941 §237 provides:

"When in an action for the recovery of real or personal property any person having an interest in the property applies to be made a party, the court may order it to be done."

There was no suggestion made to the trial court by either the plaintiff or the defendant that Texas county be made a party. And there is no contention in this court by either party in their briefs that Texas county is a necessary party. Any interest Texas county has in said royalty would not be prejudiced nor foreclosed by an affirmance of this judgment. Texas county would be in the same legal position it occupied, as to any interest it owned in said royalty before the state brought the quiet title action.

It is stated in the majority opinion:

"Inasmuch as the Commissioners of the Land Office never acquired title to the one-half of the royalty formerly owned by Southland, their secretary had no authority to certify to the county treasurer of Texas county that the Commissioners were the owners thereof, and said county treasurer had no authority or right to strike said property from the taxable-property list and strike all

delinquent taxes assessed and charged against said land, and all tax certificates and tax deeds based upon such delinquent taxes, insofar as this one-half of the royalty is concerned; so sec. 151, Title 64, O.S. 1941, has no application."

The county treasurer would be required, under said section, supra, to make cancellation of all tax certificates and tax deeds on, as least, the land and mineral interest covered by the mortgage. The Legislature has not enacted a law subjecting royalty to taxation.

We may sometime be presented with this identical question, to wit: When the State forecloses its mortgage on land, with outstanding royalty, that a county is holding a resale tax deed to, can the county cancel the resale tax deed to the land and royalty covered by its mortgage and retain the outstanding royalty?

If this question was made an issue in the trial court (in this case it was not), then on appeal to this court we would be confronted with a serious problem, in face of 64 O.S. 1941 §151, which is as follows:

"Upon the acquirement of the legal title of any lands by the Commissioners of the Land Office, either by cancellation of the Certificate of Purchase, foreclosure of mortgage, warranty deeds, or otherwise, the Secretary of the Commissioners of the Land Office shall certify such fact to the County Treasurer of the county in which such lands are situated, and upon such certification it shall be the mandatory duty of the County Treasurer of such county to remove said lands from the taxable property list, and to strike from the record or make proper notation upon the books and records of such County Treasurer that all delinquent taxes assessed and charged against said lands and all tax certificates and tax deeds based upon such delinquent taxes, are canceled and nullified. Any County Treasurer of this State who fails and refuses to comply with the requirements and provisions of such certification by the Secretary, and of this Section, shall

render himself subject to ouster from office and shall be liable upon his official bond for any damage that may be caused by the State by his neglect and omission. The recordation in the office of the proper County Clerk of any Sheriff's Deed to the State of Oklahoma as grantee or of any Warranty Deed given to the State of Oklahoma in settlement of mortgage indebtedness or the cancellation of any Certificate of Purchase, when certified by the Secretary to the Commissioners of the Land Office to the proper County Treasurer, shall ipso facto cancel all delinquent taxes on the real estate involved, and shall likewise cancel all outstanding tax certificates or tax deeds based upon taxes levied subsequent to the recordation of the mortgage to the Commissioners of the Land Office, or subsequent to the issuance of the canceled Certificate of Purchase by the Commissioners of the Land Office."

This court should withhold its decision on the question until a case is presented, at which time it would have the benefit of briefs and oral argument, if it so desired, by interested parties.

Regardless of the caution used by this court in preparation and adoption of its opinions to keep it free from dictum, the same has eked in, in a few instances. However, this is the first instance wherein this court has reversed the judgment of the trial court with its decision based solely upon dictum. This is also the first time this court has reversed the judgment of the trial court because he did not require, on his own motion, an additional party to be brought in, when there was no indication that the third party has any desire to be brought in, or that either party to this action has any view or made any request that the third party should be brought in.

Dictum is defined to be a statement or holding in an opinion not responsive to any issue, and not necessary to the decision of the case.

The trial court no doubt had well in mind that the State of Oklahoma and the defendant, Royalty Company, were the only parties to the suit and the only parties to be considered. He also was informed, as shown by the stipulation, that all tax proceedings had been canceled; whether rightfully or wrongfully, was not an issue before him, therefore, under the above facts and circumstances, rendered the following judgment, to wit: "The title of the Southland Royalty Company to a one-half interest in the oil, gas and other minerals in and under the above described land should be quieted as to any claim of the State of Oklahoma", thus leaving untouched any claim of any other party to any part of the minerals.

Regardless of the tax sale transacted by the county, the mortgage of the State was not affected and its security neither increased nor decreased.

The State cannot acquire title in a foreclosure sale to more land, or interest therein, than was actually covered by its mortgage, in the absence of a special pleading and proof showing a subsequent transaction wherein the omitted interest was added.

The result of the majority action is to add cost and expense to some party, perhaps to all parties, and to cause further delay to the School Land Commission in obtaining the relief and title settlement to which we all agree the Commission is entitled. This delay of justice is not only unnecessary, but wholly wrong in my view. The law is too well established to require citation that matters not presented to the trial court will no be considered by this court on appeal, and no judgment of the trial court will be reversed on an issue not presented to the trial court.

Whether Texas county is the owner of said royalty was not an issue in the trial court, and, therefore, is not a proper issue for this court to decide.

I therefore respectfully dissent: