Elmer Lee JACKSON et ux., Appellants,

v.

Woodrow Wilson WELCH and State Farm Insurance Company, an Insurance Corporation doing Business in the State of Oklahoma, Appellees.

No. 47196.

Supreme Court of Oklahoma.

Jan. 27, 1976.

Larry D. Stuart, Lyons, Dean & Stuart, Pryor, for appellants.

Best, Sharp, Thomas & Glass, Joseph A. Sharp, Jack M. Thomas, Tulsa, for appellees.

IRWIN, Justice:

Barbara Ann Jackson received injuries in an automobile accident with a vehicle allegedly driven by Woodrow Wilson Welch (Welch). Barbara Ann and her husband, Elmer Lee Jackson (Jackson), filed suit against Welch to recover damages. Welch, who had in the interim suffered personal tragedies of his own, moved from his rural residence to the City of Talhequah, Oklahoma, and from there to some unknown place in California. Jacksons made numerous attempts at personal service on Welch, all of which were returned with remarks indicating, in substance, that Welch was not found, having moved to California.

Counsel for the Jacksons resolved to serve Welch by means of the Oklahoma Nonresident Motorists Statute, 47 O.S. 1971, § 391 et seq. After taking actions intended to comply with the Act, counsel sent to State Farm Insurance Company notice of intent to take default judgment against State Farm's insured, Welch. State Farm examined the court file and determined to its satisfaction that the Jacksons had not obtained service on Welch in person or through the provisions of the Nonresident Motorists Statute. Being so satisfied, State Farm took no action. Jacksons took default judgment. Thereafter, Jacksons instituted garnishment proceedings against State Farm.

State Farm defended on the grounds that there was no valid judgment on which to predicate an indebtedness of State Farm to Welch, because the court was without jurisdiction to grant judgment in the absence of proper service. The trial court subsequently sustained State Farm's position. Jacksons appeal.

There is no factual dispute. Counsel for the Jacksons admits non-compliance with the letter of the law as set out in 47 O.S. 1971, §§ 394 and 398. The applicable portions of § 394, which relate to service of summons and notice of suit against a nonresident, states that ". . . the original summons or notice of suit . . ." may be served:

> "(a) by serving a copy of said original summons or notice of suit on said Secretary of State or in lieu thereof by mailing with postage prepaid by certified mail with return receipt requested a copy of said original summons or notice of suit to said Secretary of State, together with a fee of Two Dollars . . .

> "(b) by mailing to the defendant . . ., within fifteen (15) days after the filing of said summons or notice with the Secretary of State, by registered mail with return receipt requested, addressed to the defendant at his last known residence or place of abode, a notification of said filing with the Secretary of State."

Prior to Welch's departure for California, Welch had his mail forwarded to his son's residence, but Welch had never lived at the residence of his son. In an attempt to comply with subparagraph (b), counsel sent notice of suit by registered mail to the residence of Welch's son. This was done on the belief that the notice was more likely to get to Welch addressed as it was, than by sending the notice to his last known address.

Counsel attempted to serve the Secretary of State, as required by subsection (a) by filing his summons and a copy in the office of the Court Clerk of Cherokee Coun-

ty, together with sufficient funds for the Secretary of State's fee, and requesting the Court Clerk to send a copy of the notice to the Secretary of State. For some unknown reason, the notice was posted by regular mail without certification or request for a return receipt. Counsel received from the office of the Secretary of State a cash register receipt from the Secretary of State's office for the amount of three dollars bearing hand writing by some unknown person stating "Dist. Ct. Cherokee County C–72–177." The number C–72–177 correctly identified Jacksons' suit against Welch.

Section 398 requires that:

"Proof of the filing of a copy of said summons or original notice of suit with the Secretary of State, and proof of the mailing or personal delivery of said notification to said nonresident shall be made by affadivit of the party doing said acts. All affidavits of service shall be endorsed upon or attached to the originals of the papers to which they relate. All proofs of service, including the return registry receipt, shall be forthwith filed with the Clerk of the District Court.

"Provided, that if the party or his attorney, makes an affidavit that the registry receipt has been lost, such affidavit may be filed in lieu of the registry receipt."

Counsel received no registry receipt, only the aforementioned $3.00 cash register receipt. The cash register receipt was not filed of record until January of 1974, almost six months after Jacksons had taken judgment by default against Welch. Nor did counsel attempt to file with the court any affidavit, which admittedly could not contain a sworn statement as to the loss of the registry receipt, but which could have explained the absence of the registry receipt.

Jacksons contend that their admitted failure to comply with the letter of the notice provisions of the Nonresident Motorist Statute does not affect the validity of their judgment in that their efforts at service substantially comply with the requirements of the law. They cite *Williams v. Egan,* Okl., 308 P.2d 273 (1957), as authority that substantial compliance with the applicable statutes is sufficient. In Williams, notice was properly mailed to the address of a partnership business in an effort to serve both the partnership and a partner individually. Williams actually received the notice. Williams raised the issue of jurisdiction on motion to quash which was overruled with exception. Afterwards, Williams entered a general appearance and litigated the case fully. The precise holding of this Court was that, given those circumstances, service of notice was in substantial compliance with the applicable statutes.

Strict compliance with 47 O.S. 1971, § 391 et seq. is not required to attain proper service on a nonresident motorist. Where substantial compliance is clearly demonstrated from the record, a judgment based thereon will not be disturbed. This Court will not, however, sanction defective service. The standard of substantial compliance may not be as severe as that of strict compliance; it is nonetheless a stringent criteria. As stated by this Court in *Kasner v. Stanmire,* 195 Okl. 80, 155 P.2d 230 (1945), ". . . substantial compliance . . . is not shown unless it is made to appear that the purpose of the statute is shown to have been served."

The purpose of the subject legislation is two fold, to afford the injured resident means of redress and to afford the nonresident motorist a meaningful opportunity to defend himself. Jacksons do not contend that Welch ever had actual notice of the suit. In this case several procedural steps for obtaining substitute service on the nonresident motorist under 47 O.S. 1971, § 391 et seq. are tainted with a defect of some sort. Even if we were to assume for the sake of argument only that no one of the failures to comply strictly with the requirements of the statute was so severe as to defeat the purpose of the statute, the cumulative effect of all of the defects prohibits a finding of substantial compliance. We offer no opinion as to wheth-

er any of the specific defects in service taken alone constitute substantial compliance. We merely hold that on this record substantial compliance has not been shown.

Lastly, Jacksons argue that since State Farm had notice of Jacksons' intent to take a default judgment, but opted to take no action to prevent that occurrence, State Farm is now estopped to raise the defect in service. The estoppel argument is not persuasive. Jacksons offer no authority in support of their estoppel argument.

State Farm cites as authority for its position *Thompson v. Liberty Mut. Ins. Co. of Boston, Mass.*, 390 F.2d 24 [10th Cir. 1972]. Therein the federal court observed that under Oklahoma law a valid judgment is a prerequisite to a garnishment proceeding and that a garnishee may properly show jurisdictional defects in the judgment sued upon. We feel the Thompson case correctly reflects the Oklahoma law. No estoppel bars State Farm from raising the defective service as a defense to the Jacksons' garnishment action.

Judgment of the trial court affirmed.

All the Justices concur.